UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MATIAS CORTES PEREZ,

       Petitioner,

v.                                             Case No. 2:26cv14

JEFFREY CRAWFORD,
ICA-FARMVILLE DETENTION
CENTER, *et al.*,

       Respondents.

## REPORT AND RECOMMENDATION

Pending before the Court is a Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. 1. This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons explained below, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED**.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Petitioner Matias Cortes Perez ("Petitioner") filed the instant Petition seeking release from ICE custody or a bond hearing before an Immigration Judge. ECF No. 1 at 8. Petitioner is a native of Honduras. ECF No. 7, attach. 1 at 2. Customs and Border Patrol officers encountered Petitioner on August 16, 2021, after he crossed the border into the United States from Mexico.[1] *Id.* Petitioner was released from custody and given a future check-in date. *Id.* On November 1, 2021, Petitioner was issued a Notice to Appear, which charged him with being inadmissible into the United States.

---

[1] The record is unclear as to the exact date Petitioner entered the United States. *See* ECF No. 7, attach. 1 at 2.

*Id.* at 3. He was placed into removal proceedings. *Id.* On June 24, 2025, the Immigration Court denied Petitioner's application for relief and ordered him removed. *Id.* Petitioner appealed that decision, and his appeal remains pending. *Id.*

Petitioner was taken into civil immigration custody on July 9, 2025, after he was arrested by local authorities for driving while intoxicated, a criminal offense. *Id.* Petitioner filed a Bond Redetermination Request with the Immigration Court on August 6, 2025. *Id.* The Immigration Court granted Petitioner an $8,000 bond on August 19, 2025, and ordered him released from custody. *Id.* However, that same day, ICE filed a Form EOIR-43, Notice of Intent to Appeal Custody Redetermination. *Id.* By filing that form, the Immigration Judge's custody redetermination was automatically stayed pursuant to 8 C.F.R. § 1003.19(i)(2). *Id.* ICE perfected the Form EOIR-43 by filing a Notice of Appeal and legal brief. *Id.* Petitioner did not file an opposition to ICE's appeal. *Id.* ICE filed a Motion to Stay Custody Redetermination on October 8, 2025, which remains pending. *Id.*

On October 1, 2025, the Immigration Judge issued a memorandum that explained her August 19, 2025 decision to grant Petitioner's release on bond. ECF No. 1 at 11. The Immigration Judge provided the following explanation:

> At the custody hearing in the instant case, the Immigration Court found that the [Petitioner] is not subject to mandatory detention and does not pose a danger to persons or property, a threat to national security, or a risk of flight. Accordingly, the Immigration Court granted the [Petitioner's] request for release on bond. The Immigration Court's Decision and DHS's appeal were entered prior to the Board's Decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), which held that "Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." Nevertheless, this Memorandum and Order is merely to record the Immigration Court's Decision at the time of the custody hearing, which was based on the state of precedential case law at that time.

*Id.* at 13.

Petitioner is detained at ICA-Farmville Detention Center located in the Eastern District of Virginia. ECF No. 1 at 1. The Court received and filed the Petition on January 8, 2026. *Id.* On January 15, 2026, the Court ordered Respondents to show cause why the Petition should not be granted. ECF No. 5. Respondents filed their response on January 21, 2026, arguing that the Petition should not be granted because Petitioner's detention is lawful. ECF No. 7. Petitioner did not file a response.[2]

## II. DISCUSSION

Petitioner argues that he is detained under 8 U.S.C. § 1226(a) and entitled to a bond hearing. ECF No. 1 at 6. Petitioner maintains that he was detained while already present in the United States and is, accordingly, not considered an applicant for admission under § 1225(b) and is not subject to mandatory detention. *Id.* He also states that he has not been convicted or arrested for any crime that requires him to be detained. *Id.* In response, Respondents argue that Petitioner's detention is lawful because he is subject to mandatory detention under § 1225(b)(2)(A). ECF No. 7 at 5–31. Respondents' position—which they have taken regularly before this Court and other courts in the preceding months—is that Petitioner is an "applicant for admission" because he entered the country without inspection and is accordingly subject to mandatory detention under § 1225(b)(2). *Id.*

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been

---

[2] Petitioner's mail has been largely undeliverable due to the Court having an incorrect mailing address for Farmville Detention Center. *See* ECF Nos. 8–11. Because this Court recommends granting Petitioner relief, the Court issues this Report and Recommendation without a response from Petitioner.

3

strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-cv-018888, 2025 WL 3191922, at *2 (E.D. Va. Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted). After considering the response to a habeas petition, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### 1. Legal Framework

The INA establishes the statutory framework that governs aliens who are detained upon arrival into the United States and those already present in the country.[3] *Abreu v. Crawford*, No. 1:24-cv-01782, 2025 WL 51475, at *3 (E.D. Va. Jan. 8, 2025), *appeal dismissed*, No. 25-6174, 2025 WL 2604455 (4th Cir. Apr. 22, 2025). That framework distinguishes between § 1225, applicable to "noncitizens who are detained *upon arrival* into the United States," and § 1226, applicable to individuals who "have *already entered* the country, legally or otherwise." *Id.*

Pursuant to § 1225(a), an alien detained *upon arrival* into the United States is defined as an "applicant for admission" and subject to mandatory detention. 8 U.S.C. § 1225(a). The INA distinguishes between two categories of applicants for admission. *Id.* First, § 1225(b)(1) applies to "aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" and "certain other aliens designated by the Attorney General at his discretion." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (citing § 1225(b)(1)(A)(i) and § 1225(b)(1)(A)(iii)). Second, § 1225(b)(2) is a "catchall provision," applying to "all applicants for admission not covered by § 1225(b)(1)." *Id.* (citing § 1225(b)(2)(A), (B)). Under both provisions,

---

[3] Consistent with the INA's text, the Court uses the term "alien" here. *See* § 1101(a)(3) (defining an "alien" as "any person not a citizen or national of the United States").

applicants for admission are subject to mandatory detention.   § 1225(b)(1)(B)(ii)-(iii); § 1225(b)(2)(A).

Pursuant to § 1226(a), an alien who has *already entered* the country may be detained or released on bond pending a removal decision. § 1226(a).  Detention under § 1226(a) is discretionary; the Attorney General may continue to detain the alien or "may release the alien" on bond or conditional parole.[4] § 1226(a)(1)–(2).  Aliens detained under § 1226(a) "are entitled to a bond hearing before an [Immigration Judge] at any time before entry of a final removal order." *Hasan v. Crawford*, 800 F. Supp. 3d 641, 652 (E.D. Va. 2025) (quoting *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025)).

The Respondents' argument central to this Petition—that an individual who has already entered the country is subject to mandatory detention under § 1225(b)(2) instead of discretionary detention under § 1226(a)—has been considered at length and rejected by numerous courts in this jurisdiction and around the country. *See, e.g., Quispe v. Crawford*, No. 1:25-cv-1471, 2025 WL 2783799, at *6 (E.D. Va. Sept. 29, 2025) (citing cases); *Ceba Cinta v. Noem*, No. 1:25-cv-1818, 2025 WL 4053171, at *2 (E.D. Va. Oct. 29, 2025); *Duarte Escobar v. Perry*, No. 3:25CV758, 2025 WL 3006742, at *13 (E.D. Va. Oct. 27, 2025).[5]  As recognized in *Ceba Cinta*, Respondents' position that individuals who are already present in the country are considered applicants for

---

[4] Certain aliens are not entitled to release under § 1226(a), including those who "fall into one of several enumerate categories involving criminal offenses and terrorist activities." *See Jennings*, 583 U.S. at 289 (citing § 1226(c)(1)).  Though the record reflects that Petitioner was arrested for driving while intoxicated, *see* ECF No. 7, attach. 1 at 3, Respondents do not state whether Petitioner was convicted for that offense, and in any event, it does not appear to the Court, nor do Respondents argue, that the offense falls within the categories of offenses requiring mandatory detention.

[5] *See also Barco Mercado v. Francis*, No. 25-CV-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (supplying an appendix of "at least 350 [] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States" where challengers to "the administration's new position that all noncitizens who came into the United States illegally, but since have been living in the United States, must be detained until their removal proceedings are completed" have prevailed).

admission "reflects DHS's novel interpretation of decades-old immigration detentions statutes which . . . is contrary to DHS's implementing regulations and published guidance, the decisions of its immigration judges (until very recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction." 2025 WL 4053171, at *2 (citing cases).

*2. Analysis*

In light of the above legal framework, the Court makes the following findings:

First, for the same reasons explained in *Ceba Cinta*, the Court finds that Petitioner is detained pursuant to § 1226(a).[6] The INA makes clear that § 1225(b)(2)(A) extends to "applicants for admission" and not individuals like Petitioner, who was detained while already in the United States. Petitioner's continued detention without the opportunity for bond is unlawful, and habeas relief is warranted. *See* 28 U.S.C. § 2241(c)(3).

Second, because Petitioner is detained pursuant to § 1226(a), he is governed by the discretionary detention provisions set forth in that statute. Under § 1226(a) and its implementing regulations, Petitioner is entitled to a bond hearing before an Immigration Judge, in which an Immigration Judge must determine whether Petitioner is a danger to the community and whether he is a flight risk. Here, however, that hearing already occurred on August 19, 2025, where the Immigration Judge ordered that Petitioner be granted an $8,000 bond and released from custody. ECF No. 1 at 11, 13. As explained by the Immigration Judge in her memorandum order, Petitioner "is not subject to mandatory detention and does not pose a danger to persons or property, a threat to national security, or a risk of flight." *Id.* at 13.

_____

[6] The Court explicitly adopts and incorporates the reasoning in *Ceba Cinta* into this Report and Recommendation. *See* 2025 WL 4053171, at *2–3.

6

Third, the appropriate relief in this matter is ordering that Petitioner be released because he has already received a bond hearing at which an Immigration Judge determined that he was entitled to release on bond. Respondents argue that "the sole relief that this Court can provide is an order compelling the Immigration Court to hold a bond hearing[.]" ECF No. 7 at 3 n.2. They reiterate later in their brief that "[i]f the Court grants the Petition, the Court should order only a bond hearing where the alien bears the burden to show that his release would not pose a danger to property or persons and that he is likely to appear for future proceedings. *Id.* at 30–31 n.10.

Despite having ample opportunity, Respondents' brief does not acknowledge that an Immigration Judge *already determined*—merely months ago—that Petitioner would not pose a danger and that he is not a risk of flight. Nonetheless, the Court acknowledges Respondents' submission of an affidavit of Charles M. Byrne, which states that ICE filed and perfected their appeal of Petitioner's bond, which remains pending. ECF No. 7, attach. 1 at 3. Further, the filing of Form EOIR-43 automatically stayed the Immigration Judge's custody redetermination pursuant to 8 C.F.R. § 1003.19(i)(2). *Id.* These events do not alter the Court's finding that Petitioner should be released on his bond, and Respondents did not provide any argument to the contrary.

As explained by this Court in *Hasan v. Crawford*, the automatic stay provision in 8 U.S.C. § 1003.19(i)(2) violates Petitioner's substantive and procedural due process rights. 800 F. Supp. 3d at 658–60. Like in *Hasan*, the automatic stay provision violates Petitioner's substantive due process rights because Respondents have not provided any special justification to deny Petitioner the liberty that the Immigration Judge ordered subject to posting his bond, nor have they argued that Petitioner poses a threat to public safety. *See id.* (finding that "the governmental interest in the continued detention of these least-dangerous individuals, in contravention of the order of a neutral fact-finder, does not outweigh the liberty interest at stake"). "If enforced by the Court, the

automatic stay regulation would destroy that due process by permitting unilateral governmental detention, even after an [Immigration Judge] made an individualized finding that a person did not pose a threat to the safety of others or a risk of flight. In essence, the automatic stay provision renders the Immigration Judge's bail determination an empty gesture." *Id.* at 659 (citations and quotations omitted). Further, like in *Hasan*, all three factors outlined in *Mathews v. Eldridge* weigh in favor of finding that the automatic stay provision violates his procedural due process rights.[7] *Id.* at 660. The Court adopts that analysis to this Report and Recommendation and finds that, for the same reasons, all three *Mathews* factors weigh heavily in favor of finding that the automatic stay provision violates Petitioner's procedural due process rights. Because the automatic stay provision "constitutes an unequivocal violation of due process," the Court finds that it does not prevent Petitioner from being released on his bond. *See id.*

In sum, the appropriate remedy in this matter is that Petitioner be released on the bond that was set on August 19, 2025, by the Immigration Judge.

### III. RECOMMENDATION

For the reasons explained above, the Court **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED**, and that Petitioner be released from detention.

The Court further **RECOMMENDS** that:

- Respondents be ordered to release Petitioner on the bond that was set on August 19, 2025, no later than **one day** after entry of a final order in this matter, with all his personal property;

---

[7] In *Mathews v. Eldridge*, the Supreme Court identified three factors for courts to consider when evaluating due process requirements: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976)

- Respondents shall file a status report with the Court within **three days** of a final order in this matter confirming that Petitioner has been released;

- Respondents be **ENJOINED** from detaining Petitioner on the grounds that he is subject to detention pursuant to 8 U.S.C. § 1225(b)(2)[8]; and

- Respondents be **ENJOINED** from rearresting Petitioner unless: (1) he has committed a new violation of any federal, state, or local law; (2) he has failed to attend any properly noticed immigration or court hearing; or (3) he is subject to an administratively final removal order pursuant to § 1231.

## IV.  REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party.  *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment

---

[8] To be clear, if the Immigration Judge's bond determination is reversed on appeal on grounds *unrelated to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)*, Respondents would be entitled to take custody of Petitioner.

9

of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel of record for Respondents.

/s/

Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
February 19, 2026